***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Rowell and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Rowell with modifications.
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and that the Commission has jurisdiction of the parties and the subject matter hereto, and that all parties have been correctly designated and there is no question as to misjoinder or nonjoinder of the parties.
2. There was a compensable injury to plaintiff's back on January 28, 2003. The back injury was accepted pursuant to an Industrial Commission Form 63. There remains a dispute concerning the compensability of the kidney issue.
3. That at the time of the alleged injuries the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
4. That at the time of the alleged injuries, an employment relationship existed between the Plaintiff and the Defendant/Employer, and the Defendant/Employer was self-insured for Workers' Compensation coverage, said insurance being serviced by CNA Claim Plus.
5. That at the time of the injury, plaintiff's average weekly wage was sufficient as to qualify him for the maximum compensation rate for 2003 of $674.00.
6. That the Plaintiff's last day of work for Defendant-Employer was January 28, 2003, and he has not returned to any employment as of the date of the hearing in this matter.
7. The parties Stipulated into evidence as Stipulated Exhibit # 1, Pre-Trial agreement, as revised by the parties.
8. The parties Stipulated into evidence as Stipulated Exhibit # 2, medical records, Industrial Commission forms, personnel records, and etc., as revised by the parties.
 *********** RULING ON EVIDENTIARY MATTERS
The objections contained in the depositions of Dr. Charles S. Haworth M.D., Dr. Pullan Brown, M.D., and Dr. Carlos Encinas, Ph.D., are ruled upon in accordance with the applicable rule of law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 41 years old at the time of hearing before the Deputy Commissioner, was employed by defendant-employer on January 28, 2003, as a iron worker and boilermaker when he fell approximately eight feet from a beam while working at the Belews Creek site. Defendant accepted the compensability of plaintiff's back injury pursuant to the filing of an Industrial Commission Form 63. Defendant, however, denied that Plaintiff's fall on January 28, 2003, resulted in a bruised kidney and blood in Plaintiff's urine.
2. Plaintiff has a lengthy employment and educational history. He has a degree from Southeastern Community College in Forestry Management and an associate's degree from North Carolina State University in small wood lot management. He worked in the timber industry for 4 or 5 years and then began working in construction in 1991 or 1992. He has a certification from Brunswick Community College as a steam-turbine millwright mechanic and is certified as a journeyman in the crafts of boilermaker and ironworker. Plaintiff's discovery responses also indicated that he had been self-employed as a timber pin hooker in the past.
3. Plaintiff has traveled as far as Kentucky and all over North Carolina for work and that he typically found work through word of mouth or trade journals.
4. After the January 28, 2003 incident, plaintiff was initially treated by West Columbus Urgent Care, G G Healthcare, and Chadbourn Family Practice. After an MRI performed on March 8, 2003 revealed degenerative disc disease at L4-5 and intraforaminal disc protrusion at L4-5 on the right likely producing mild effacement of the right L4 exiting nerve, plaintiff was referred to Dr. Charles Haworth, a Board-certified neurosurgeon, at Duke Neurosurgical Associates in Lumberton. Regarding Plaintiff's complaints for his kidney condition he has been primarily treated by Dr. Glinski.
5. Plaintiff initially presented to Dr. Haworth on March 31, 2003. After performing a physical examination, Dr. Haworth noted his opinion that plaintiff had an acute far lateral right L4-5 disc herniation and L4 radiculopathy secondary to the fall. Dr. Haworth recommended an epidural steroid injection and physical therapy. When plaintiff did not receive significant pain relief from the conservative measures, on June 6, 2003, Dr. Haworth recommended a "small, minimally invasive right far lateral microdiscectomy at L4-5." The procedure was performed without complication on July 31, 2003.
6. Dr. Haworth continued to treat plaintiff post-operatively and noted on August 22, 2003 that plaintiff did not attend a course of physical therapy that was scheduled, that plaintiff reported he felt he was relapsing and that he was continuing narcotic pain medication. Upon physical examination on August 22, 2003, Dr. Haworth noted tenderness to palpation over the lumbar spine, negative straight leg raising test bilaterally, and break-away weakness to hand testing in all muscle groups of legs except the left quadriceps.
7. Due to the concern of Dr. Haworth about how poorly plaintiff appeared to be doing, an updated lumbar MRI was obtained on September 12, 2003. Except for the disc dessication at L4-5, the MRI showed no evidence of spinal stenosis or disc herniation and no evidence of any foraminal stenosis including L4-5 on the right.
8. After reviewing the MRI scan, Dr. Haworth noted, "I think that Mr. Williamson's exam and performance are inconsistent with his neurologic exam and radiographic studies." Dr. Haworth recommended that a functional capacity evaluation be performed. Moreover, Dr. Haworth noted, "I can tell that he is unenthusiastic about returning to work. He now wants to try to do some physical therapy."
9. Although physical therapy was subsequently scheduled, plaintiff presented for same only once or twice. With regard to the functional capacity evaluation which was performed on December 1 and 2, 2003, Dr. Haworth noted that the study was invalid because of a lack of effort and an inconsistent amount of effort on plaintiff's part. The FCE evaluator specifically noted that, due to the submaximal effort, an appropriate work level could not be assessed at that time.
10. In November, 2003, plaintiff complained to Dr. Haworth of numbness and tingling in the left side of his neck and face which began in October. Dr. Haworth noted that this was the first complaint of any neck symptoms. Upon physical examination, Dr. Haworth recorded good range of motion of the neck with vague discomfort, no particular pattern to reproduction of pain based upon movement, break away motor strength in all the muscle groups in the upper extremities, and good strength upon encouragement and reinforcement.
11. With regard to the neck complaints, Dr. Haworth noted, "I cannot really see anything focal on the physical examination to suggest a specific radiculopathy. His problem is so far out from his Workman's Compensation injury at this point, I have a hard time attributing his symptoms to his injury." However, Dr. Haworth ordered cervical spine films an MRI to make sure that nothing was amiss in plaintiff's neck before returning him to work. On January 15, 2004, Dr. Haworth once again examined plaintiff and noted that the cervical spine films dated January 12, 2004 showed minimal degenerative changes and that the MRI scan was "completely normal" and that there was nothing on the films to explain his facial numbness or his arm symptoms.
12. In January, 2004, Dr. Haworth was asked by plaintiff to keep him out of work until March due to an upcoming workers' compensation hearing. Dr. Haworth noted his opinion that plaintiff was "long past" the time period for which a person would normally be kept out of work for a one-level minimally invasive microdiscectomy.
13. On January 15, 2004, Dr. Haworth noted that plaintiff was able to return to work with a permanent partial disability rating of ten percent (10%) and lifting restrictions set at fifty (50) pounds. In addition, plaintiff was released from further care. In Dr. Haworth's opinion Plaintiff reached maximum medical improvement on January 15, 2004, taking into consideration his overall complaints and the medical treatment he had received.
14. Plaintiff next presented self-referred to Dr. Adam Pullan Brown at Coastal Neurosurgical Associates. Dr. Brown noted that no surgical indications were warranted at that time and that treatment recommendations included pain management, physical therapy, medications and injections. He further noted the possibility of a discogram and fusion surgery after the failure of conservative modalities.
15. However, on June 10, 2004, Dr. Brown prepared correspondence which indicated that plaintiff had called the office claiming that he could absolutely not do his job. Dr. Brown noted, "It is not clear to me exactly whether he can or cannot do his job. Perhaps a Functional Capacity Evaluation may be of benefit." By his own admission, Dr. Brown had no knowledge of the invalid FCE conducted just six months earlier.
16. Upon plaintiff's return to Dr. Brown on July 29, 2004, plaintiff reported a worsening in pain. Dr. Brown indicated that physical examination was unchanged from the February 26, 2004 exam and was "essentially non-focal." Moreover, Dr. Brown noted, "I don't think that this gentleman has real physiologic pain. I think some of this is functional." Dr. Brown suggested doing a scan and, if no changes or significant surgical problems existed, then he would suggest physical therapy and work hardening. He noted that injection therapy or pain management were also possibilities.
17. A lumbar spine MRI was performed on August 7, 2004 and it revealed degenerative changes at L4-5 but no evidence of recurrent or residual disc herniation or other disc abnormality.
18. Plaintiff followed-up with Dr. Brown on August 19, 2004 reporting back pain to the left of midline. Dr. Brown reviewed the results of the MRI with plaintiff. Dr. Brown noted that plaintiff had not been to physical therapy and that he was going to set up some therapy. He also noted that surgery was not likely to be an issue.
19. Upon plaintiff's return to Dr. Brown on October 14, 2004, Dr. Brown noted a continuation of back pain all the way to the foot with no right sided symptoms and lack of improvement with physical therapy. He additionally recorded, "I am not sure why this gentleman is still having pain. Everything else looks to be fairly intact."
20. In his December 14, 2004 note, Dr. Brown recorded plaintiff's continuing reports of pain. Plaintiff reported that the pain occasionally went into the left leg and did not go into the right leg. With regard to the treatment options, Dr. Brown provided the same recommendations as previously but noted: "It still is not clear to me exactly what this gentleman's difficulty is."
21. When asked at his deposition about the cause of the leg pain, Dr. Brown responded that it would likely be soft tissue since no nerve impingement was demonstrated on several MRI scans. He specifically responded, "So, I imagine it has to be soft tissue as well." However, Dr. Brown testified that there is no testing that can be done to determine soft tissue injury and the diagnosis is based upon patient complaints.
22. At his deposition, Dr. Brown answered affirmatively when asked whether he ever noted findings on plaintiff's physical examination consistent with symptom magnification. He additionally agreed that pain is a subjective symptom. Dr. Brown further agreed that no objective testing or radiographic testing confirmed the reason why plaintiff continued having back pain.
23. Additionally, Dr. Brown agreed that plaintiff's current left sided symptoms are not related to the previous surgery performed by Dr. Haworth for a right-sided disk herniation. When asked whether he thought the left sided symptoms were related to the fall, he commented that if the initial pain complaints were all right sided at the time, "it may not be related to his fall."
24. Dr. Brown additionally indicated, as a neurosurgeon, that he performs one level microdiscectomies similar to the surgery performed by Dr. Haworth. In his experience, he would expect someone who does desk work to be out of work as little as two weeks and with someone who does heavy work, it may be as much as two or three months. Moreover, Dr. Brown was asked about a statement made by Dr. Haworth that plaintiff seemed unenthusiastic about returning to work. When asked whether that was his impression of plaintiff, Dr. Brown testified, "I think that that may be a reasonable statement." Moreover, Dr. Brown testified that it was possible that plaintiff's pain is non-physiologic or non-organic.
25. A labor market study was performed in July 2004 which revealed positions in the local labor market that would be suitable to plaintiff's 50 pound lifting restriction. Further, defendants provided job descriptions in the Stipulated Evidence which revealed numerous crafts for which plaintiff could be certified that require up to 50 pounds lifting.
26. Both the opinions of Dr. Haworth and Dr. Brown regarding plaintiff's clinical presentation are given considerable weight. However, since Dr. Haworth is the physician who performed surgery and post-operative monitoring of plaintiff, his opinions are entitled to the greatest weight.
27. Plaintiff has the burden to show both the existence and the extent or degree of his disability.
28. After due consideration of the record evidence in its entirety, Plaintiff has shown that he was disabled as a result of his January 28, 2003 back injury until January 15, 2004, when he was released to return to work with a fifty pound (50lb) lifting restriction by Dr. Haworth. Therefore, on January 15, 2004, the medical evidence supports that Plaintiff was capable of some work taking into account his only physical work limitation was a lifting restriction set at fifty pounds (50lb).
29. Following January 15, 2004, Plaintiff has failed to show that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment. In fact Plaintiff has admitted that he has not looked for work since January 28, 2003.
30. On January 15, 2004, Plaintiff was determined to have reached maximum medical improvement by Dr. Haworth and was rated with a ten percent (10%) permanent partial disability to his back.
31. Defendant has continued to pay Plaintiff temporary total disability compensation following January 15, 2004.
32. A review of the medical evidence of record in its entirety reveals that Plaintiff's bruised kidney condition has resolved and that Plaintiff has failed to show any resulting disability from this condition.
33. Upon review and consideration of Defendant's motion to compel compliance with Vocational Rehabilitation and Plaintiff's response to Defendant's motion, it is determined that Plaintiff has not complied with the Vocational Rehabilitation services provided to him by the Defendant.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On January 28, 2003, Plaintiff sustained an injury by accident in his employment with Defendant-employer, when he fell approximately eight (8) feet from a beam resulting in an injury to his back and a bruised kidney. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of Plaintiff's injury by accident on January 28, 2003, and his resulting medical condition to his back, Plaintiff is entitled to receive temporary total disability compensation at a rate of $674.00 per week from January 28, 2003 until January 15, 2004. N.C. Gen. Stat. § 97-29.
3. Plaintiff reached maximum medical improvement as of January 15, 2004 and is entitled to payment for the permanent partial disability impairment rating of ten percent (10%) to his back assigned by Dr. Haworth. N.C. Gen. Stat. § 97-31(23).
4. Defendant is entitled to a credit against future settlement for all payments made to Plaintiff after January 15, 2004 in excess of the thirty (30) weeks of permanent partial disability compensation. N.C. Gen. Stat. § 97-42.
6. Plaintiff has failed to show by the greater weight of the evidence that his complaints involving his left sided pain, including his neck, are related to compensable January 28, 2003 injury by accident. N.C. Gen. Stat. § 97-2(6).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's entitlement to temporary total disability compensation ended on January 15, 2004. Plaintiff is entitled to payment of thirty (30) weeks of additional benefits pursuant to the ten (10%) rating assigned by Dr. Haworth. Defendant is entitled to a credit against future settlement for all payments made after January 15, 2004 in excess of the thirty (30) weeks of permanent partial disability compensation.
2. Defendant shall pay all medical expenses incurred or to be incurred by Plaintiff as a result of his compensable injury when bills for the same have been submitted to and approved by the Industrial Commission, for so long as it tends to effect a cure and give relief or lessen Plaintiff's disability. These medical expenses shall exclude the medical treatment that Plaintiff received regarding his left sided pain, to include his neck.
3. Defendant's motion to compel compliance with the Vocational Rehabilitation services provided to Plaintiff by Defendant is Hereby Granted. It is Hereby Ordered that Plaintiff shall comply with the reasonable Vocational Rehabilitation services provided by Defendant. N.C. N.C. Gen. Stat. § 97-25.
4. Defendant shall pay costs.
This 14th day of December 2006.
S/___________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ THOMAS J. BOLCH COMMISSIONER